## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ALLEN REESE | * | |
| Petitioner | * | |
| v | * | Civil Action No. RDB-20-3080 |
| DONNA BOUNDS, *Warden* | * | |
| Respondent | * | |

\*\*\*

### MEMORANDUM OPINION

Petitioner Allen Reese is a pretrial detainee at the Worcester County Detention Center ("WCDC").[1]  In this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. §2241, filed on October 22, 2020, Reese, by his counsel, challenges his pretrial detention and requests release from confinement or placement in community-based detention.  Petition, ECF No. 1.  Respondent Warden Donna Bounds has filed an Answer (ECF No. 5), seeking dismissal of the Petition to which Petitioner filed a Reply.  ECF No. 5.  Respondent also filed a court-ordered Response to the Reply.  ECF No. 8.  The matter is fully briefed, and this Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6.  For the reasons set forth below, the Petition will be DENIED.

### BACKGROUND

Reese is charged by indictment filed on January 28, 2020, in the Circuit Court for Worcester County ("Circuit Court") with sexual abuse of a minor, two counts of sexual offense in the third degree and related offenses.  *State v. Reese*, Case No. C-23-CR-20-000030 (Cir. Ct.

---

[1]  For the purposes of this Memorandum Opinion, WCDC and the Worcester County Jail are the same detention facility. *See* https://www.co.worcester.md.us. (referring to Donna Bounds as Warden of the Worcester County Jail (visited March 3, 2021).  At the same address, is the Worcester County Detention Center ("WCDC") which houses detainees of the U.S. Immigration and Customs Enforcement. *See* https://www.co.worcester.md.us. (visited March 3, 2021).

Worcester Cty.).  ECF No. 4 -1, 9-13.  Reese was working as a guidance counselor for Delaware Guidance Services, took temporary custody of a minor, fifteen-year old boy in foster care in Delaware, and drove the minor to Ocean City, Maryland where Reese is alleged to have committed two sexual assaults against him.  *Id*; *see also* ECF No. 1-1 at 22-23, 63.  Reese has been held in detention at WCDC since his arrest.

In this Petition, Reese claims that it is impossible to practice social distancing and hygiene precautions to guard against contracting the COVID-19 virus at WCDC, because prisoners live in close proximity and cleaning products are unavailable or in short supply.  ECF No. 1 at 3, 4, 10-11.  Reese claims that he is particularly vulnerable to serious illness or death caused by the COVID-19 virus because he is 65 years old, *id*. at 4, and his continued detention subjects him to unreasonable risk of harm in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.  *Id*. at 14.  Additionally, he asserts that his detention violates his rights under the Due Process Clause of the Fifth Amendment to be free from punitive conditions of confinement because his confinement lacks a reasonable relationship to any legitimate governmental purpose. *Id*. at 18.  Reese states he has no prior criminal history and there is no evidence that he will become a flight risk if he were released on bail or placed in community-based detention.  ECF No. 1 at 19. He avers that home detention and electronic monitoring can ensure that he will be monitored continuously.  ECF No. 5 at 4.

On December 14, 2020, Reese tested positive for the COVID-19 virus and exhibited unspecified symptoms.  ECF No. 5 at 2.  Reese alleges that there have been at least 16 confirmed cases of COVID-19 among inmates (including Reese) and 26 confirmed cases among staff.  ECF No. 5 at 3, 10.  Respondent states the allegation regarding staff is unsubstantiated and refuted in her declaration.  ECF No. 8 at 7; Declaration of Donna Bounds dated January 27, 2021, ECF No.

8-1 at 34-35.  According to Respondent, Reese had one positive test for COVID-19 in December 2020, exhibited no symptoms, did not require medical treatment, and has since tested negative for the virus on two consecutive dates, January 13, 2021 and January 20, 2021.  Decl. of Warden Donna Bounds, ECF No. 8-1 at 34.

## PROCEDURAL HISTORY

### I.      Bail Hearings

On February 10, 2020, the Circuit Court held a bond hearing and ordered Reese held without bond.  *See* ECF No. 4-1; *see also* Transcript. July 23, 2020, ECF 1-1 at 93.  On February 20, 2020, Reese requested a second bail review, and the hearing was held on February 24, 2020. The Circuit Court determined that Reese continue to be held without bond because he presented a flight risk and a danger to the victim and the community.  ECF 1-1 at 58-59.

On March 16, 2020, the Circuit Court denied Reese's Motion for Bond Review, noting the evidence made at his previous hearing included that Reese: had booked a flight out of the country and was a flight risk, presented a danger to the community, presented a danger to the identifiable victim, no condition of pretrial release or combination of conditions can reasonably protect against such danger, there was no indication that Reese suffered from a preexisting condition that makes him more vulnerable to COVID-19, and the WCDC is able to address medical issues related to COVID-19.  ECF 1-1 at 16; ECF 4-1 at 16-18.  The Circuit Court therefore concluded that "under the totality of the circumstances, release of the Petitioner is not in the interest of justice."  *Id*. at 18.

On April 2, 2020, Petitioner filed a § 2241 Petition that this Court denied on April 6, 2020, for lack of exhaustion of State remedies.  *Reese v. Bounds*, RDB-20-884 (D. Md. 2020); ECF No. 4-1 at 19-21.

On May 22, 2020, Mr. Reese filed a Petition for Writ of Habeas Corpus in the Circuit Court, raising concerns about his health and safety in detention due to his age and the COVID-19 pandemic.  He complained about the conditions at WCDC and requested a hearing.  ECF No. 4-1 at 4.  On June 16, 2020, the Circuit Court denied the Petition without a hearing.  ECF No. 4-1 at 17-18.

Reese filed an Application for Leave to Appeal to the Court of Special Appeals of Maryland.  ECF No. 4-1 at 24-28.  The Court of Special Appeals granted the Application for Leave to Appeal, vacated the Circuit Court's order, and remanded with "instructions to expeditiously hold a hearing on the record to reconsider [Reese's] petition for writ of habeas corpus in light of all applicable factors, including the factors prescribed in Chief Judge Barbera's Administrative Order of April 14, 2020 'Guiding the Response to The COVID-19 Emergency as it Relates to those Persons Incarcerated or Imprisoned'[2]and Maryland Rule 4- 216.1(f)."[3] *Reese v. State,* Case No. CSA-ALA-188-2020.  ECF 4-1 at 22.

## II.    Evidentiary Hearing on State Habeas Petition

On remand from the Court of Special Appeals, the Circuit Court conducted an evidentiary hearing on July 23, 2020.  Reese, by his counsel, argued that he was "susceptible to COVID-19" due to his age, and because he has edema, anemia, and a recurrence of childhood asthma, that he was in danger of contracting the virus by virtue of his detention at WCDC, and "that he is not dangerous in any way, shape or form, and that he is not a flight risk."  ECF No. 1-1 at 14, 33-34.

---

[2] *See* https://www.mdcourts.gov/coronavirusorders.

[3] Maryland Rule 4-216.1 "direct[s] trial courts to detain defendants who pose flight risks or who are dangerous, and to release everyone else subject to non-financial conditions, except as a last resort."  *Bradds v. Randolph*, 194 A.3d 444, 446 (Md. Ct. Spec. App. 2018).  In determining whether to grant pretrial release, a court considers several factors including: "the nature and circumstances of the offense charged"; "the danger of the defendant to an alleged victim"; and "any other factor bearing on the risk of a willful failure to appear and the safety of each alleged victim…, including all prior convictions . . . that occurred within three years of the date the defendant is charged as an adult."  Md. Rule 4-216.1(f)(2).

Reese testified to working with "thousands" of children during his 30-year career, and this was the first time he had ever been charged with criminal conduct. *Id*. at 24, 26. Reese testified that since entering WCDC he has suffered edema (swelling of his legs) and a recurrence of childhood asthma. He also has anemia. He told the Court that it is not possible to maintain social distancing of six feet away from others because he is housed in a small prison block. ECF 1-1 at 14, 33, 35, 75. Reese acknowledged prisoners are provided cleaning supplies and he is an "avid cleaner" but each inmate decides whether to clean the cell and the common areas. *Id*. at 35-36.

Also testifying at the hearing were Warden Bounds and Detective Michael Karsnitz, who works for the Ocean City Police Department and investigated the allegations against Reese. Additionally, the Circuit Court took judicial notice of Warden Bounds' declaration dated July 20, 2020. ECF 4-2 at 51-52, 91. In her declaration Bounds stated: (1) the WCDC has a maximum capacity for 500 prisoners, and as of July 20, 2020, the total prisoner population was 169 persons; (2) inmate housing units are equipped with hand soap dispensers in the dayrooms and detainees have access to bars of soap to wash, and as of March 13, 2020, additional cleaning practices were implemented to give extra attention to high touch areas such as phones and door handles; (3) the WCDC is closed to visitors; (4) staff are admitted after screening and temperature checks; (5) masks were provided to staff beginning on April 6, 2020, and to prisoners beginning on April 14, 2020, with new masks provided weekly or earlier if soiled or wet; (6) prison medical providers are equipped with gloves, masks and other personal protective equipment; (7) all newly arrived inmates are assigned to a single cell and quarantined for fourteen days to monitor for potential COVID-19 symptoms; (8) a detainee who tests positive, is quarantined for fourteen days and must be retested twice with negative results before returning to the prison population; (9) correctional or medical staff with a positive test for COVID-19 are removed from duty for fourteen days and

must have two negative COVID-19 tests before returning to duty; (10) on June 1, 2020 COVID-19 testing was completed for all prisoners, with negative results, and all WCDC staff, with six employees testing positive for the virus.  The six officers were immediately removed from duty for fourteen days, and retested on June 15, 2020, with negative results.  The officers were retested a second time on June 17, 2020, and returned to duty after the tests results were negative; (11) since May 26, 2020, 10 officers have tested positive, were immediately excused from duty for fourteen days, and returned to work only after two negative COVID-19 test results.  Bounds Decl. ECF 4-1 at 31-33; ECF 1-1 at 48, 51-52.

In her testimony, Warden Bounds confirmed that several staff members who tested positive for COVID-19 were taken off duty and not permitted to return to work until they twice tested negative for the virus.  Bounds testified that Wellpath, a medical services contractor, provides 24-hour medical services for WCDC prisoners, and if an inmate needs medical treatment beyond what the facility medical providers can handle, the inmate is sent to the hospital.  At the time of the hearing, Reese was housed in a cell by himself.  Transcript, July 23, 2020, ECF No. 1-1 at 50-52.

Detective Michael Karsnitz testified that as part of his investigation he learned that after DNA was collected from Reece he had booked a round-trip flight to Morocco, one of five countries that does not have an extradition agreement with the United States.  ECF 1-1 at 61-62; *see also* ECF 5 at 11-12 (flight itinerary) ECF 1-1 58-59 (Presiding Judge's recollection of testimony at bond hearing about scheduled travel).  Karsnitz testified that the victim had Reese's DNA on his penis and scrotum.  *Id*. at 67.  Karsnitz also testified that he believed Reese was a danger to the community, as he was charged with having assaulted a minor in his care on two different occasions. ECF No. 1-1 at 63.  Karsnitz also testified that the victim, like Reese, lives in lower Delaware, and the victim is concerned about Reese's release from detention.  *Id*. at 63-64, 66.

6

Ruling from the bench, Circuit Court Judge Beau Oglesby state, "I think it's fair to characterize the writ of habeas as attacking Mr. Reese's confinement in light of his individualized situation and how that was affected by the current situation of COVID-19 or Coronavirus." *Id.* at 95. WCDC has "undertaken serious efforts to protect its population. This is clear from the declaration of Warden Bounds as well as her testimony." *Id.* at 98. The Circuit Court found that: COVID-19 precautions are implemented to provide prisoner and staff COVID-19 testing, masks, and cleaning supplies, with those exposed to the virus quarantined. No inmate had contracted COVID-19 at that time. The Circuit Court determined that Reese's edema, anemia, and asthma had been addressed by prison staff; visitation and access to WCDC was limited, the jail was operating at "significantly less than 50 percent capacity" and WCDC demonstrated that it was able to address COVID-19 medical concerns, including related medical issues and access to specialized medical care if needed outside the facility. *Id.* at 98-101. Additionally, the Court found no indication given the evidence presented that Reese suffers from a pre-existing condition that renders him more vulnerable to COVID-19 than others his age, and that he had offered nothing specific other than previously submitted medical correspondence to show how he was more vulnerable. *Id.* at 104. The Circuit Court concluded that: "the jail is conducting itself appropriately. It is doing everything that anyone should expect under these circumstances." *Id.* at 100-101.

The Circuit Court next addressed whether Reese remained a flight risk.

The court continues to find as a result of this hearing that there in fact is evidence that was presented that Mr. Reese booked a flight out of the country. This occurred contemporaneously or immediately following a DNA sample being taken by a member of law enforcement. Mr. Reese was aware of a Maryland investigation as a result – at a minimum as a result that DNA sample being taken. Yet he booked a flight to a country which is one of only five countries that does not share an extradition agreement with the United States of America. As a result, the Court found in the bond review and continues to find that to the satisfaction of clear and

convincing evidence [4] that Mr. Reese is in fact a flight risk.

ECF 1-1 at 103.

Further, the Court determined that Reese continues to present a danger to an identifiable victim or the community pending trial, and as a result of all of the testimony presented at the hearing, "by clear and convincing evidence" there was no condition of pretrial release or a combination of conditions to reasonably ensure or protect against those two dangers. *Id*. at 104.

In what was presumably a reference to *Coreas v. Bounds*, 451 F. Supp.3d 407 (D. Md. 2020),[5] the Court distinguished the current conditions at WCDC from those when *Coreas* was decided:

> I acknowledge there has been a prior federal examination and ruling regarding the conditions at the Worcester County Jail, and that a different court on a different date determined that the circumstances at the Worcester County Jail would require and mandated the release of an individual, but that was a different date and time. And it would be inappropriate for this Court to only consider circumstances that existed then as opposed to where we are today.
>
> For instance, if Mr. Reese was not exposed to COVID-19 up until a week ago and then today he was, and the Court only considered what happened in the past and not considering what happens today, that would not be appropriate. So the Court

---

[4] *See Wheeler v. State,* 864 A.2d 1058, 1062-1065, (2005) (discussing the "clear and convincing evidence" standard in evaluating pretrial release).

[5] In *Coreas v. Bounds,* 451 F. Supp.3d 407 (D. Md. 2020), aliens detained by United States Immigration and Customs Enforcement ("ICE") at WCDC and the Howard County Detention Center, filed a habeas corpus action against immigration and detention officials, including Warden Bounds, challenging their detention as a violation of their right to due process under the Fifth Amendment and seeking immediate release in response to the COVID-19 pandemic. On April 3, 2020, the Honorable Theodore D. Chuang, denied without prejudice Petitioners' Motion for a Temporary Restraining Order after determining there was no likelihood of success on the merits because at that time there were no confirmed COVID-19 cases in either detention center. *Id*. at 426.  Judge Chuang indicated that he would find a constitutional violation likely, however, if a detainee or a staff member had tested positive for COVID-19 or upon Respondents' fail[ure] to submit a timely certification that they have obtained COVID-19 tests and will administer a test to any individual at [the] Detention Facility who exhibits suspected COVID-19 symptoms." *Id*. at 425-29. On May 7, 2020, Judge Chuang granted WCDC immigration detainees Angel Guzman Cedillo and William Kemcha's, Renewed Motion for a Preliminary Injunction for release, after they provided new evidence that at least one WCDC detainee had COVID-19 symptoms but was not tested. *Coreas v. Bounds*, 458 F. Supp.3d 352, 361-362 (D. Md. 2020), Judge Chuang determined that Cedillo, who was 54 years old and suffered from hypertension, prostate problems, and a history of traumatic injuries that limited his cognitive abilities, *Coreas v Bounds*, 451 F.Supp.3d at 417, and Kemcha, who was 58 years old and suffered from hypertension, lymphedema and a compromised immune system after cancer treatment, *Coreas v. Bounds*, 458 F. Supp.3d at 356, provided evidence of objectively serious medical conditions placing them at high risk if they contracted the virus. *Id.* at 357-

needs to consider everything, and most importantly what are the circumstances today.

*Id.* at 97.

On July 24, 2020, Reese filed an Application for Leave to Appeal the Circuit Court's decision. The Court of Special Appeals denied leave to appeal on September 3, 2020, and the mandate issued on October 7, 2020. *Id.* at 24-29, 30.

## DISCUSSION

Respondent seeks dismissal of the Petition on the grounds that the Petition raises claims not cognizable under 28 U.S.C. § 2241 and, if the claims are cognizable, they fail to demonstrate Reese's pretrial detention violates the Constitution. ECF No. 5.

### I.     Cognizability of Claims

A district court may grant a writ of habeas corpus if a prisoner "is in custody under or by color of the authority of the United States" or is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The habeas statute confers "broad authority" on courts to "hear applications for writs of habeas corpus filed by persons claiming to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Timms v. Johns*, 627 F.3d 525, 530 (4th Cir. 2010) (quoting 28 U.S.C. § 2241), including federal habeas corpus petitions filed by state pre-trial detainees. *See Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 488–89 (1973); *Robinson v. Thomas*, 855 F.3d 278, 283–84 (4th Cir. 2017); *In re Wright*, 826 F.3d 774, 782 (4th Cir. 2016) (citing with approval *McNeely v. Blanas*, 336 F.3d 822, 824 n.1 (9th Cir. 2003)). In a habeas proceeding, a petitioner must challenge the "fact or duration" of confinement and seek relief in the form of immediate release. *Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 (1973); *Seth v. McDonough,* 461 F. Supp 3d 242, 256 (D. May 21, 2020) (citing cases): *cf. Coreas v. Bounds*, No. TDC-20-0780, 451 F.Supp.3d 407, 419–21 (D. Md. Apr. 3, 2020)

9

(holding that a "claim by an immigration detainee seeking release because of unconstitutional conditions or treatment is cognizable under § 2241").

Respondent argues that § 2241 is inappropriate for raising a challenge to Reese's conditions of confinement, and the circuits are split on the question whether a conditions claim may be raised in a habeas petition.  The United States Court of Appeals for the Fourth Circuit has not issued a binding, precedential opinion on this issue.  *See Wilborn v. Mansukhani*, 795 F. App'x 157, 163 (2019) (noting the Third, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Circuits have determined that conditions of confinement claims must be brought only as a civil rights action, while the D.C., Second, and First Circuits recognize them as habeas petitions).  In *Wilborn*, an unpublished opinion, the Fourth Circuit held that challenges to the conditions of confinement cannot be brought as a habeas petition and noted that habeas corpus is "primarily a vehicle for attack by a confined person on the legality of his custody and [that] the traditional remedial scope of the writ has been to secure absolute release— either immediate or conditional—from that custody."  *Id*. at 163(quoting *Lee v. Winston*, 717 F.2d 888, 892 (1983)).  In other unpublished decisions, the Fourth Circuit has held that conditions of confinement claims are not cognizable in habeas proceedings; *see also Rodriguez v. Ratledge*, 715 F. App'x 261, 266 (4th Cir. 2017) (Conditions claims not cognizable in habeas proceedings.); *Braddy v. Wilson*, 580 F. App'x 172, 173(4th Cir. 2014) (same).

Here the Petition challenges the conditions of Reese's confinement.  Reese asserts that he has been "subjected… to conditions of confinement that increase his risk of contracting COVID-19." ECF 1 at 18 ¶68.[6]  Though Reese claims that he is not a flight risk who should be detained,

---

[6] Challenges "to the circumstances of . . . confinement" may be brought as a civil rights action, while "[c]hallenges to the validity of  . . . confinement or to particulars affecting its duration are the province of habeas corpus."  *Hill v. McDonough*, 547 U.S. 573, 579 (2006) (quoting *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam)).

the gravamen of his claim for relief is that Respondent has failed to provide appropriate COVID-19 precautions. This claim would not exist but for the alleged conditions of his confinement. Accordingly, this Court finds Reese's conditions claim is not cognizable on federal habeas review.

Further, if this Court were to determine it appropriate to consider the Petition on its merits, Reese's constitutional claims would be unavailing.

## II.      Constitutional Claims

The rights of a state pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, which "requires that [he] not be punished," whereas "[a] sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment." *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). 103 (1976). As a practical matter, the analysis is largely the same because the due process rights of a pretrial detainee are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Mass. General Hosp.*, 463 U.S. 239, 244 (1983).

When "evaluating the constitutionality of conditions or restrictions of pretrial detention" a court must first determine "whether those conditions amount to punishment of the detainee." *Id.* at 535. "[T]o prevail on a substantive due process claim, a pretrial detainee must show unconstitutional punishment by proving that the challenged conditions were either '(1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred.'" *Williamson v. Stirling*, 912 F.3d 154, 178 (4th Cir. 2018) (quoting *Slade v. Hampton Roads Reg'l Jail,* 407 F.3d 243, 251 (4th Cir. 2005)). Where "a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Wolfish*, 441 U.S. at 539.

Absent explicit intention to punish a pretrial detainee, a court "must evaluate the evidence and ascertain the relationship between the actions taken against the detainee and the custodian's supporting rationale." *Williamson*, 912 F.3d 154, 178 (4th Cir. 2018). "That inquiry turns on whether the actions taken may validly be attributed to an alternative, nonpunitive rationale, and whether they appear 'excessive in relation to the alternative purpose assigned.'" *Id*. (citations omitted). The Fourth Circuit has also held that a pretrial detainee necessarily "makes out a due process violation if he shows 'deliberate indifference to serious medical needs'. . . because no legitimate nonpunitive goal is served by a denial or unreasonable delay in providing medical treatment where the need for such treatment is apparent." *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988) (citation omitted)).

Reese claims his pretrial detention is impermissible punishment which violates his right to due process., arguing his age and medical conditions increase his risk for COVID-19 related complications and the conditions at WCDC are inadequate to protect him from serious risk of harm. The Circuit Court findings demonstrate a legitimate nonpunitive governmental objective for Reese's detention. Specifically, Reese is a flight risk, a danger to the community facing serious charges of sexual assault against a minor, and there was no condition or combination of conditions to ensure against these concerns. ECF No. 4-2 at 93, 103-104.

Reese next contends the conditions of his detention by exposing him to the risk of COVID-19 constitute unlawful punishment. A prison official who acts with "deliberate indifference to serious medical needs" is liable under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To show deliberate indifference, a prisoner must demonstrate first, that the alleged deprivation is, objectively, sufficiently serious, and second, that subjectively, the prison official acted with a sufficiently culpable state of mind. *See Cox v. Quinn,* 828 F.3d 227, 235–36 (4th Cir.

2016); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).  This includes conditions that are "very likely to cause serious illness and needless suffering" such as "exposure of inmates to [the] serious, communicable disease" of COVID-19, where the inmate "shows no serious current symptoms." *Helling v. McKinney*, 509 U.S. 25, 33 (1993).  Of import, liability may be avoided if the prison official responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer v. Brennan,* 511 U.S. 835, 844 (1994).  Reasonableness of the actions taken must be judged in light of the risk known to the defendant at the time. *Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001); *see also Jackson v. Lightsey*, 775 F.3d 170, 179 (4th Cir. 2014).

At the evidentiary hearing, the Circuit Court credited Warden Bounds' testimony and affidavit about the precautions taken at WCDC against COVID-19, as well as medical staff's ability to address COVID-19 related medical needs of detainees as well as Reese's particular medical concerns.  The Circuit Court made specific findings including that detainees are tested for the virus, there is a quarantine protocol for inmates and staff displaying symptoms or testing positive for the virus, personnel who test positive for the virus are placed on leave until they twice tested negative, outside visitors are restricted, personal protective equipment, including cleaning products and masks are provided, and increased sanitation measures are in place.  ECF 4-2 at 98-103, 105.

Respondent has also filed with the Response to Petitioner's Reply, her declaration dated January 27, 2021, in which she states: (1) WCDC has implemented numerous strategies, including universal mask-wearing, quarantining incoming inmates, increasing sanitation practice, and universal testing; (2) to date, 15 rounds of universal testing have occurred at the jail; (3) as of January 20, 2021, testing resulted in only one positive test of a staff member (out of approximately 188 tests); (3) the next universal round of testing for staff was scheduled for January 27, 2021; (4)

inmates are tested once per month unless circumstances warrant additional tests; (5) to date, no inmates have become seriously ill or died from COVID-19; (6) If an inmate were to present with a serious medical issue, they can be transported to the local hospital for treatment (16 miles to Berlin, 19 miles to Salisbury).  Bounds Decl., ECF No. 8-1 at 34-35.

Exposure to COVID-19 objectively presents a substantial risk of harm to detainees' health, and it is undisputed that Reese tested positive for the virus, though the record shows he did not require medical care for unspecified symptoms and has since twice tested negative.  WCDC acted to prevent the spread of the virus and to improve the capacity to treat it.  These steps appear to have been effective and refute suggestion of deliberate indifference.  Under such circumstances, were Reese's claims cognizable on habeas review, they would support a claim of constitutional violation.  Though the risk of contracting COVID-19 for Reese was not ultimately averted, the numerous efforts to prevent the virus and contain its spread defeat suggestion of deliberate indifference to Reese's serious medical needs.

## CONCLUSION

For the foregoing reasons, the Petition will be denied.  A separate Order follows.


 _3/5/2021_____                         _____/s/_____
Date                                                      RICHARD D. BENNETT
                                                          UNITED STATES DISTRICT JUDGE